WILLIAM M. CONLEY *vs.* FREDERICK MARTIN.

WILLIAM J. CONLEY, *p. a. vs.* SAME.

MARCH 29, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   These are actions of trespass on the case, one by a father and the other by his minor son, to recover for damages sustained by them respectively by reason of personal injuries suffered by the latter and alleged to have been caused by the negligence of the defendant.  They were tried together before a jury, which returned a verdict for the father for $788 and one for the son for $5000.

In each case a motion by the defendant for the direction of a verdict in his favor was denied by the trial justice and a later motion by the defendant for a new trial was granted. Each case is now before us on the defendant's exception to the denial of the former motion and on the plaintiff's exception to the granting of the motion for a new trial.

We shall first consider the defendant's exception to the denial of his motion for the direction of a verdict.  Since the right of the father to recover is dependent on the right of his son to recover, we shall first discuss only the son's case; and in this discussion the word "plaintiff" will refer only to him.

His declaration is in two counts.  In the first count he alleged that on May 17, 1941 the defendant owned and operated a certain school, called "Martin Hall", and grounds adjoining it, being a school "conducted for the purpose of attempting to correct defects in the speech and metabolism of young children"; that on that date the plaintiff was an inmate of the school and lawfully on the premises; that the defendant negligently allowed a certain brick and stone tower on the premises to be out of repair; and that in consequence the plaintiff, while exercising due care, fell from it and thus suffered a compound fracture of his left wrist.

The second count is similar to the first, except in the allegation of negligence by the defendant.  In effect this is that, although he knew that the plaintiff was not "in such condi-

tion as to be able to be upon the grounds of the defendant unaccompanied" by an adult person, the defendant negligently allowed him to be upon the grounds not so accompanied, the result being that, while the plaintiff was "in the exercise of due care for one of his age and condition", he was caused to fall from the tower and to break his wrist.

At the trial the following facts were proved by uncontradicted testimony: The defendant, who was educated and had practiced as a general physician, had later specialized in the treatment and cure of young persons afflicted with stammering. From 1937 on, through the period involved in these cases, he had been conducting a boarding and training school for that purpose on a tract of land in the town of Bristol bounded on the east by Mount Hope Bay.

About 100 feet west of the shore were the school buildings, of which the main one, where the pupils, supervisors and teachers lived and where classes were conducted, fronted westerly. Nearby, on land in front and on land a little to the south of it, were playgrounds for baseball, tennis, handball and the like, where these and other sports were carried on, all under the supervision of a director of physical education. The pupils were forbidden to go anywhere else on the school grounds except under supervision.

West of the tract of land on which were the school buildings and playgrounds was an adjoining tract of land, which was also owned by the defendant, and was by him used exclusively for farming purposes and the cutting and sawing of wood. Well inside of this farm tract and about 200 to 300 yards to the west of the school property was an old hollow circular tower, which apparently had formerly been used as a silo. The plaintiff himself testified that this was "about a good couple of minutes' walk" from the school.

The wall of this tower was built partly of bricks and partly of comparatively small flat stones of irregular shapes. On the southerly side, from the ground to a height of about six or seven feet, the stones extended farther outward, forming

a nearly horizontal pathway or shelf around the tower, leading somewhat upward to the left. The lower part of this pathway was about six feet from the ground.

At the base of the tower was a dump and a pigpen, with fences around them and separated from each other by a fence. To get to a shelf of stones from which one could step up to the nearly horizontal pathway above mentioned, it would be necessary to pass through the dump or the pigpen, or both, and climb over one or two fences. On the ground, near the foot of the tower, on this side, were a number of stones, which, the plaintiff testified, had apparently become loose and fallen from the tower wall.

It was in trying to climb up the outside of this tower along this pathway, following another boy, who was also a pupil of the school, that the plaintiff was injured. This was soon after the latter's eleventh birthday and when he had been a pupil of the school for about two months. The two boys had come down from the school, unattended and without permission by or notice to anyone.

The suggestion that they go to the tower on this occasion had been made by the other boy; and there was no evidence that the plaintiff had ever before been on it or seen anyone on it. They climbed up on one of the fences which was next to the tower and from that got onto the tower's nearly rectangular base, which was a little wider than the tower itself, the other boy being in the lead. The latter stepped to the left and got upon the above-mentioned stone shelf. He then began to walk around the tower, to the left.

The plaintiff started to follow him and stepped on a stone, preparatory to stepping upon the ledge where his companion had gone. He called to the latter and said that he did not think he "could make it." The other boy said: "Come on", and the plaintiff went on. But a stone that he stepped on gave way and rolled down upon the ground below and he went down with it, sustaining a compound fracture of his left wrist.

Upon these undisputed facts, with regard to the tower and its situation and condition, and as to how the plaintiff, at the time of his fall, happened to be where he was upon the tower base, unattended by any adult and without permission, express or implied, by the defendant or anyone representing him, we cannot find that the evidence, viewed most favorably to the plaintiff, would support a conclusion that negligence by the defendant, in failing to maintain the walls and structures on the premises in a state of repair, was the legal cause of the injuries to the plaintiff, as charged in the first count of the declaration.

This leaves, for consideration by us, only the negligence alleged in the second count of the plaintiff's declaration, *viz.*, that the defendant, knowing that the plaintiff was not "in such condition as to be able to be upon the grounds of the defendant unaccompanied" by an adult person, carelessly and negligently allowed him to be upon these grounds unaccompanied by an adult person.

There was no evidence that the plaintiff was mentally subnormal and the evidence is to the contrary. Moreover, his attorney admitted that he was not, and did not contend that the defendant was under any duty to treat him like an inmate of an institution for mentally defective persons where constant supervision and attendance would be required. The most that was contended for the plaintiff under this second count was that he was inexperienced in looking out for himself and avoiding danger of injury; and that the defendant had notice of this fact and had assumed a duty to him to provide an attendant for him every time he went away from the school building. The evidence viewed most favorably to the plaintiff is to the effect, as his father testified, that when he took the boy to the school the defendant said to the boy: "You will have a teacher or attendant with you every time you leave the building."

The undisputed evidence shows that the boy knew that he was not to leave the building without a teacher or attend-

ant. On the afternoon of the accident he had, under instructions from one of the teachers, picked some flowers in the school garden and had then taken them to another teacher, who at that time was in charge of the office in the school. According to his testimony she received the flowers from him and there and then told him to go upstairs and wash his hands. He did so and then came down again. Though he knew that she was still in the office, he did not say anything to her or any other teacher or attendant about his going outdoors again. On the contrary, he walked down the corridor and, not seeing any teacher there, decided to go on out of the building without making any further effort to find one. He did so and soon went to the old silo with the other boy.

No evidence was introduced to show that there were no teachers nearby in the building, who were available if he had looked for them or had asked the teacher attendant, whom he knew to be in the office; and, for all that appears in the evidence, there was a teacher who was available to go out with him if she knew that the plaintiff intended to leave the building. Yet, without asking or looking for one, and without the knowledge or consent of the defendant or any teacher or attendant, and admittedly in violation of his instructions, he went on out and joined the other boy; and then went off, so unattended, to the old silo.

Therefore, we find that there was no evidence for the jury in support of an essential allegation of the second count of the declaration, *viz.*, that the defendant negligently allowed the plaintiff to be upon the grounds of the school unaccompanied by an adult person. For this reason and because we have already herein found that the evidence did not support a verdict for the plaintiff upon the first count of his declaration, we are of the opinion that the defendant's exception to the denial of his motion for the direction of a verdict in his favor upon both counts of the declaration should be sustained. The same result, for the same reason, applies to the father's case. In view of this conclusion the exception of

the plaintiff in each case to the granting of the motion for a new trial becomes immaterial and is overruled.

The defendant's exception in each case is sustained. On April 9, 1945, the plaintiff in each case may appear before this court and show cause, if any he has, why the case should not be remitted to the superior court for the entry of judgment for the defendant.

*Henry M. Boss,* for plaintiffs.

*Sherwood & Clifford, Raymond E. Jordan, Sidney Clifford,* for defendant.